**Frederick C. STACEY, Plaintiff,**

v.

**ALLIED STORES CORPORATION,
Defendant.**

Civ.A. No. 82–2727.

United States District Court,
District of Columbia.

Feb. 29, 1984.

John W. Karr, Karr & Lyons, Washington, D.C., for plaintiff.

Guy R. Fairstein, Burns, Summit, Rovins & Feldsman, New York City, Edward Jasen, Burns, Summit, Rovins & Feldsman, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge.

Frederick C. Stacey charged the Allied Stores Corporation ("Allied" or "Allied Stores") with violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34. Following a four-day trial, the jury rendered a plaintiff's verdict and found that Allied willfully violated the ADEA, when in May 1982 it terminated Stacey's employment as corporate security officer and did not select him for other positions in Allied's organization. Counsel for the parties stipulated that the amount of damages on the liability issue would be submitted later for determination by the Court.

At the conclusion of the plaintiff's case in chief, and later, after completion and presentation of all testimony and evidence, Allied moved for a directed verdict. Rule 50(a) Fed.R.Civ.P. On each occasion the Court expressed serious doubt as to the strength and substance of the plaintiff's claims. Accordingly, the defendant's motions were denied without prejudice and a final decision was reserved pending the jury's finding on the merits. The jury returned a verdict for the plaintiff and a judgment was duly entered. Thereafter, Allied moved to set aside the verdict and the accompanying judgment, and to have judgment entered in accordance with its motion for a directed verdict, Rule 50(b) Fed.R.Civ.P., or, in the alternative, to grant a new trial, Rule 59(a) and (b) Fed.R.Civ.P.

For the reasons set forth below the Court determines that the defendant's Rule 50(b) motion should be granted and that Allied should be granted judgment notwithstanding the verdict.

## A.

 Allied must shoulder a heavy burden to be granted judgment notwithstanding the verdict. The standard of review is high. *Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225 (D.C.Cir.1984). In *Vander Zee v. Karabatsos*, 589 F.2d 723, 726 (D.C. Cir.1978), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979), our Circuit Court reiterated a long-recognized principle that a motion for judgment notwithstanding the verdict "should not be granted unless the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable men could not disagree on the verdict." See also *Metrocare v. Washington Metropolitan Area Transit Authority*, 679 F.2d 922, 924–25 (D.C.Cir.1982). Such a motion is merely the renewal of a Rule 50(a) motion for a directed verdict and the applicable standard is the same as when awarding a directed verdict. 9 C. Wright & A. Miller, Federal Practice and Procedures § 2530 at 574 (1971); *Lester v. Dunn*, 475 F.2d 983, 985 (D.C.Cir.1973). A jury verdict based on surmise, conjecture and a mere scintilla of evidence may not withstand a motion for judgment notwithstanding the verdict. *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163, 167–68 (2d Cir.1980); *Tackett v. Kidder*, 616 F.2d 1050, 1053 (8th Cir.1980). In granting the defendant's motion, all of the evidence offered by the parties has been considered. At the same time, however, the Court is mindful that it should not invade the province of the jury, attempt to assess witness credibility, or weigh the evidence. *Coburn v. Pan American World Airways, Inc.*, 711 F.2d 339, 342 (D.C.Cir. 1983). After employing those criteria, this Court determines that Allied Stores is entitled to the relief it seeks.

## 1.

 The Age Discrimination in Employment Act proscribes an employer from discharging or otherwise discriminating against an employee. Section 623(a)(1) provides:

It shall be unlawful for an employer ... to fail or refuse to hire or to discharge

... or ... discriminate against any individual with respect to his ... employment, because of such individual's age. The statute proscribes only one reason for discharge—age. For the plaintiff Stacey to prevail, "he [has] to prove by a preponderance of the evidence that his age was the 'determining factor' in his discharge in the sense that, 'but for' his employer's motive to discriminate against him because of age, he would not have been discharged." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1019 (1st Cir.1979).

■ The framework and procedure by which a plaintiff establishes his right to relief in a Title VII discrimination proceeding, *United States Postal Service Board of Governors v. Aikens*, —— U.S. ——, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) are applicable in an age discrimination claim. *Loeb v. Textron*, 600 F.2d 1010. Beyond this, and more particularly, the relevant inquiry in such a case, "is whether the plaintiff has produced evidence from which a trier of fact might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 562 (5th Cir.1983).

### B.

The plaintiff Stacey was employed by Garfinckel, Brooks Brothers, Miller & Rhoads (GBM) from May 1977 to November 1981. He served as GBM's corporate security officer; his office was located in Washington, D.C., at the headquarters corporate office. In August 1981 Allied Stores began negotiations to acquire GBM. By November 1981 the GBM shareholders approved a transaction, where by GBM merged into and with a subsidiary of Allied Stores, ASC Stores III. Stacey continued with the Allied subsidiary until May 1982, when he was terminated. (Trial Transcript (T.T.) 100 (23–14).)

Allied Stores advanced two major reasons why Stacey was terminated; both were legitimate business nondiscriminatory decisions. First, when Allied acquired GBM it made a business decision to close GBM's headquarters office in Washington, D.C. Allied had no need for the D.C. office since positions there—including plaintiffs' —were duplicative, unnecessary, and were already performed by Allied personnel located and employed in its New York office. Second, audits and investigations undertaken by Allied revealed deficiencies and problems in areas of Stacey's performance while serving as a GBM security officer. A discussion and review of those decisions follows.

### 1.

As early as August 1981 when the merger-acquisition negotiations began and continuing thereafter, the plaintiff and other co-workers were concerned with the future of the GBM Washington corporate office and their continued employment. Indeed, Stacey testified that he realized that functions of his office could and would possibly be absorbed by Allied's corporate headquarters located in New York City. T.T. p. 172 (2–19); p. 178 (4–11); p. 179 (10–17). In December 1981 Robert Vandemark, a GBM officer and Stacey's immediate supervisor advised him that their Washington headquarters office would not continue. T.T. p. 184 (17–25); p. 185 (1–16). The plaintiff testified that he was given his termination notice by Vandemark who told him at the time that his position was being eliminated. T.T. p. 168 (20–25).

■ There was no question and indeed, the unchallenged testimony and evidence was that many of the functions and operations performed by GBM's corporate headquarters in Washington were performed by Allied's New York office. It was also undisputed that Allied had a comparable corporate security department and personnel, in place, in New York before and at the time of the merger; that Allied's New York department and personnel served the same function and purpose performed by GBM by Stacey. This was also true with respect to positions of other employees in

GBM's Washington headquarters. Thus, as a result of the merger, Allied Stores made a business judgment as to the utilization of personnel and office facilities which affected the future employment of various employees, among whom was the plaintiff who was terminated. This was a legitimate business reason which the defendant could justifiably advance. *Parcinski v. The Outlet Co.*, 673 F.2d 34 (2d Cir.1982), *cert. denied*, — U.S. —, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983). Once an employer gives such a reason for the discharge, the employee has the burden of proving that it resulted from intentional discrimination. See *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Stacey failed to meet that burden in this proceeding.

### 2.

■ In an age discrimination proceeding, if an employer determines that a worker's performance is unsatisfactory, fails to measure up to expected standards and is then discharged, the employer's judgment is controlling and must be recognized. Management has the right to make such determinations and those decisions may not be second-guessed by the jurors. *Smith v. Flax*, 618 F.2d 1062, 1066 (4th Cir.1980).

■ There was substantial evidence and testimony that both before and after the merger, Stacey's performance as security director was inadequate. T.T. 624–646; D. Ex. 3, 4, 14, 28. Records and audit reports covering stores which Stacey supervised revealed serious deficiencies in both security and inventory controls. In early August 1981, while merger negotiations were underway, Allied Stores personnel spent several days conducting an informal audit of GBM facilities in Richmond, Virginia. They found security standards below those maintained by Allied. By late December 1981 formal audits were conducted and more reasons were found to question the sufficiency and adequacy of Stacey's past performances.

John P. Murphy, Allied's Vice President, Financial and Security Audit, gave undisputed testimony as to both the informal and formal audits of the facilities. His testimony supported the finding that Stacey's job performance fell short of Allied's standards and was unsatisfactory. The two audits were not contradicted by the plaintiff nor shown to be flawed in any manner.

Stacey's counsel challenged and argued as to when and the circumstances under which the inadequacy of plaintiff's performance was first advanced by Allied. However, aside from making an argument before the jury challenging the audits, there was a complete absence of any showing by Stacey's counsel that the audit statements were fabricated, contrived or inaccurate. The objective facts presented in Allied's audits were not disputed or challenged in any significant manner. But rather, the challenge and emphasis was directed as to the timing of the audits and why they were not used earlier by the defendant.

The ADEA does not preclude an employer from making an adverse decision against a protected senior employee if the employer makes a good faith determination that the worker's performance has been unsatisfactory. An employer is entitled to make his own policy and business judgment in discharging an employee who does not measure up to standards, if this is not a pretext.

### C.

There are additional reasons why Allied Stores is entitled to relief under Rule 50(b), Fed.R.Civ.P.

### 1.

One of plaintiff's contentions was that there were available in Allied's organization five loss prevention and security auditor positions for which he was qualified (Pl. Ex. 4) T.T. pps. 306–311, but was not offerred because of his age. In both his opening statement, T.T. p. 59, and final argument, T.T. p. 1042, Stacey's counsel referred to the five positions that plaintiff felt that he was qualified for and willing to

fill, but was not considered for. Each position was filled by persons younger than Stacey and less than 40 years of age. The positions were available in five branch stores located in Virginia, Tennessee, Texas, Kansas, and New York. One position carried an annual salary of $35,000. The salaries for the remaining four ranged from $22,000 to $27,000. Stacey's annual salary at the time was $55,000.

In contending that he was qualified for the positions, the plaintiff's self-evaluation of his abilities counts for very little. Aside from presenting testimony about the ages of the persons who were ultimately selected by management not one shred of testimony or evidence was presented as to their qualifications, experience, training or any other factor upon which a meaningful comparison could be made.

The ADEA does not compel an employer to consider or offer an employee other employment. *Parcinski v. The Outlet Co.*, 673 F.2d 34; *Nash v. Cochran, Inc.*, 548 F.Supp. 676 (S.D.N.Y.1982). The Act *does not guarantee or insure* continued employment for persons over 40 years of age; nor does the Act preclude management from arriving at a decision to retain or hire such persons if age is not a determinative factor.

An employer may discharge an elderly employee for reasonable factors other than age or for good cause, but he may not discharge an employee because of his age. The plaintiff Stacey had the burden of proving that age was a causative or determinative factor, the factor that made the difference in determining whether he should be employed. When Allied gave a legitimate reason for the plaintiff's termination, Stacey then had the burden of showing that his discharge was at least in part a result of intentional discrimination. Stacey failed to meet that burden during the course of the trial.

The evidence and argument of plaintiff's counsel concerning these other positions filled by other persons less than 40 years of age placed Allied in a poor light with the jury. However, the evidence and argument was totally insufficient to satisfy the plaintiff's burden of proof. The jury was only left to speculate.

*2.*

Another area in which the jury appears to have been misled was associated with the testimony of the plaintiff's witness Albert Bailey. In 1978–1979, Bailey worked as a security auditor under the supervision of John Murphy, Allied's Vice President for Financial and Security Audit.

Stacey's counsel proffered that Bailey would testify from direct personal knowledge, first, that two persons in security positions, James Mecouch and Manuel Ortiz, both employed by Allied and supervised by Murphy, were discharged by him because of their ages and replaced by younger persons under 40; and second, that Murphy frequently referred to the security directors under his supervision as a "cadre of young charges." The discharge of the two security employees and use of the phrase "cadre of young charges" were thus to be used to support inferences and proof of Allied's bias against older workers.

The proffer was not met. Bailey's testimony failed to lend any degree of support that Mecouch and Ortiz were discharged because of their age. In fact, each suffered a heart attack and each was reassigned for health reasons, not discharged. Indeed, Mecouch appeared as a trial witness and testified that his transfer was for health reasons and not because of age. He still was in the employ of the defendant when he appeared to testify.

A final problem with Bailey's testimony concerned the time frame of his testimony, thus presenting a problem of relevancy and a question of credibility. The latter is, of course, more appropriately a matter for the jury's deliberation. But relevancy presents a serious question. Bailey left Allied's employment in July 1979. Allied acquired GBM some 20 months later in March 81; Stacey's termination occurred in May 1982, some 34 months later. Since leaving Allied in mid-1979, Bailey had not had any immediate personal contact with Murphy or any other Allied officials. Bailey's generalized

testimony and his subjective beliefs concerning remote events were insufficient to create any issue before the jury.

Murphy denied using the phrase "cadre of young charges" attributed to him by Bailey. But in the minds of the jurors, that phrase was undoubtedly of importance, because during their deliberations they requested a reading of the Bailey-Murphy testimony. It is also noted that Bailey was unable to point to any employment decision made by Murphy in which an employee's age was ever discussed or indeed any decision made by Murphy because of an employee's age.

### 3.

On April 22, 1982, Stacey was told by his supervisor that he would be terminated, effective May 15, 1982. During the course of pretrial discovery his counsel uncovered a document listing the names of 22 GBM employees. The age of two of the employees was penciled-in opposite their names. The document (PX–1) was dated March 1, 1982.

The undisputed testimony showed that the penciled-in age notations were made on July 21, 1982. On that date two Allied Store officials met to discuss final preparations in closing down the Washington office which was scheduled for August 31, 1982. On that date notations were entered alongside the names of two female employees, an assistant controller—age 61, and a secretary—63 years of age. The official responsible for the two entries and responsible for winding down the affairs of the Washington office testified and explained that the age notations were entered on the July 21 date because of a desire and concern that the two employees be given special retirement benefits.

At first, the official responsible for the entries could not recall the precise circumstances under which the entries were made and, indeed, it was not until the second day of examination by Stacey's counsel that this explanation was given. Plaintiff's counsel pressed this point both in his direct examination of the witness and in his final argument before the jury.

However, aside from counsel's reaction and jury argument, when the document is closely and carefully considered, the fact is that the notation was placed in the exhibit three months after April 15, 1982; that is the date when Stacey was told that he was to be terminated. In addition, the testimony showed that the Assistant Controller was offered a comparable position in Richmond, Virginia, which she declined. Instead, she accepted the opportunity to retire under the terms proffered by Allied.

To argue that Allied discriminated against Stacey in April or May 1982, because notations as to age were placed against two employees' names in July 1982 was not only a specious argument but was also an argument which allowed the jury to draw unwarranted and impermissible inferences. This was of course to the prejudice of the defendant.

### CONCLUSION

The standard of review in a situation such as this is extremely deferential to the findings of the jury. But where the jury's findings are contrary to all reason and are based on speculation and surmise, appropriate relief should be granted. Such is true in this proceeding. Allied Stores advanced legitimate business reasons and decisions why Stacey's employment was terminated. The objective truth of Allied's stated grounds of a business judgment were not overcome.

A jury may not examine an employer's reasons for terminating an employee and determine that the employer's business judgment and policies do not appeal to the group's sensibilities and notions of what is proper.

In face of the clear, objective evidence as to Allied's business judgment the jury indulged in impermissible speculation and emotion in concluding that age was a "determining factor" in Allied Stores' decision to terminate Stacey.

Mr. Stacey's claim of age discrimination by Allied was based on an uncertain, tenuous foundation of circumstantial evidence. He failed to produce any extrinsic evidence to support a finding that he was discriminated against because of his age. When viewed in its entirety, plaintiff's proof was insufficient to support a finding of age discrimination. However genuine Mr. Stacey's beliefs were, the Court cannot allow the jury to reach a finding that the ADEA was violated in his case. The statute does not require an employer to provide special treatment to employees over 40 years of age. *Williams v. General Motors,* 656 F.2d 120, 129 (5th Cir.), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1981). The question to be decided by the jury "was not whether plaintiff was fairly treated but whether discrimination occurred." *Shahadi v. Reynolds Chemical,* 636 F.2d 1116, 1117 (6th Cir.1980).

In accordance with the above discussion the defendant's motion for judgment notwithstanding the verdict rendered by the jury is granted. The defendant's alternative motion for a new trial is denied. An appropriate order accompanies this opinion.