Olga K. CAZZOLA, Plaintiff, Appellee,

v.

CODMAN & SHURTLEFF, INC., Defendant, Appellant.

No. 84–1585.

United States Court of Appeals, First Circuit.

Argued Nov. 7, 1984.

Decided Dec. 28, 1984.

Rehearings and Rehearings En Banc Denied Jan. 28 and March 14, 1985.

**54**

James E. Farrell, Jr., New Brunswick, N.J., with whom Johnson & Johnson, New Brunswick, N.J., Vedder, Price, Kaufman, Kammholz & Day, Washington, D.C., Edward P. Leibensperger and Nutter, McClennen & Fish, Boston, Mass., were on brief for defendant, appellant.

Paul A. Manoff, Boston, Mass., with whom Levine & Manoff, Boston, Mass., was on brief for plaintiff, appellee.

Before COFFIN and BREYER, Circuit Judges, and WYZANSKI,* Senior District Judge.

COFFIN, Circuit Judge.

Appellee Olga Cazzola charged appellant Codman & Shurtleff, Inc. (Codman) with violating the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34. After a two-day trial, the jury ruled for Cazzola, finding that Codman wilfully violated the Act by constructively discharging her in September 1980. Codman appeals the district court's refusal to grant its motion for judgment notwithstanding the verdict, or for a new trial. After a careful review of the testimony in what we believe to be a close case, we feel constrained to affirm the decision below.

■ Our review of a denial of judgment n.o.v. is a narrow one. "Such a motion should be granted only upon a determina-

* Of the District of Massachusetts, sitting by desig-

tion that the evidence could lead reasonable men to but one conclusion, a determination made without evaluating the credibility of witnesses or the weight of the evidence at trial." *Hubbard v. Faros Fisheries, Inc.,* 626 F.2d 196, 199 (1st Cir.1980). In an age discrimination case, the inquiry "is whether the plaintiff has produced evidence from which a trier of fact might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 562 (5th Cir.1983). Review of a motion for new trial is similarly limited, and a denial will be reversed only for an abuse of discretion. *Austin v. Unarco Industries, Inc.,* 705 F.2d 1 (1st Cir. 1983).

■ We can not say on this record that no jury could reach the conclusion that Codman discriminated against Cazzola on the basis of her age. Until Congress increased the mandatory retirement age from 65 to 70 as of January 1, 1979, Codman required its employees to retire at age 65. Cazzola thus anticipated retirement in March 1979. When the law changed, she announced her intention to stay with the company, presumably in the position of Supervisor of Office Services, in which she supervised the mail room and the word processing and records retention departments. Two and one-half weeks after her 65th birthday, the company implemented a reorganization in which Cazzola's responsibilities were reduced. She lost control of the word processing department, which she had helped set up and which she had supervised since its inception. Although company officials testified that the reorganization had been planned since late 1978, it was not discussed with Cazzola at her annual evaluation in January 1979. Although company officials also testified that the reorganization was necessary because Cazzola had too much work and the departments she supervised were growing, the issue of overwork was not discussed with her at that same evaluation session. Cazzola testified that she was given an "excellent" review,

nation.

and that her supervisor promised that she would receive a job-level increase in the near future.

As part of the job change, Cazzola reported to a new supervisor, whose management style she disliked. She immediately asked for a transfer, was told by the director of personnel that nothing else was available, and was urged to stay within the department and work with the new supervisor. Cazzola testified that she tried hard to please the new supervisor, but apparently could do nothing right. Despite four years of satisfactory evaluations in virtually the same job (but with additional supervisory responsibility), Cazzola received a poor evaluation in December 1979. She was put on probation in May 1980, and was told in August 1980 that she had failed the probationary period. Cazzola then was given the choice of retiring or being reassigned to a non-supervisory position as a word processor. In that position, she would have been working immediately under a woman in her 20's in the department Cazzola had set up; the department, moreover, was under the direction of the same supervisor who had been criticizing her. Throughout the year and one-half period in which the company tried to demonstrate at trial that she had been doing a poor job, no meeting was held with the former supervisor who had always given Cazzola good evaluations to discuss the inconsistent reviews. The former supervisor had received only minor complaints about Cazzola of a type she considered predictable because of the nature of Cazzola's work. Apparently no attempts were made to transfer Cazzola to another department during this time, although the director of personnel testified that the company had a policy of trying to relocate an employee when there was an incompatibility between an employee and supervisor.

Although this evidence is all circumstantial, we believe a jury verdict finding age discrimination in this case would not be based on "surmise, conjecture and a mere scintilla of evidence." *Stacey v. Allied Stores Corp.*, 581 F.Supp. 1103 (D.D.C. 1984). Unlike *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230 (4th Cir.1982), a case emphasized by Codman, the company in this case did not have unchallenged documentary evidence demonstrating the employee's decline in performance, *id.* at 237, 243; rather, criticism of Cazzola was entirely subjective. *See also Stacey*, 581 F.Supp. at 1107 (records and audit reports revealed deficiencies).[1] We think the timing of the reorganization, the lack of consultation with Cazzola about the changes, the failure of other supervisors to probe into the sudden change in her immediate supervisor's evaluations, and the apparent absence of reasonable efforts to find her a satisfactory alternative position all suggest that the jury finding of discrimination was based on more than a "mere 'possibility' ", *Lovelace*, 681 F.2d at 242.

■■■ We next consider whether Codman constructively discharged Cazzola. Even the victim of unlawful discrimination is expected to seek legal redress while still employed unless actually fired, or constructively discharged due to a "drastic reduction in the quality of working conditions", *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119–20 (1st Cir.1977). After she failed probation, Cazzola was offered a word processing position and later the chance to remain in her old job until the end of the year while other positions possibly would have been sought for her.[2] She

---

1. Codman's emphasis on *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and the standards for establishing a prima facie case, is inappropriate after a full trial, *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) ("At this stage, the *McDonnell-Burdine* presumption 'drops from the case' ... and 'the factual inquiry proceeds to a new level of specificity.' ... [It is] 'whether the

defendant intentionally discriminated against the plaintiff.' " *Id.* 103 S.Ct. at 1482 (citations omitted)).

2. Codman's personnel administrator testified that she was uncertain whether she told Cazzola that other positions would be sought for Cazzola during the three months from October to December 1980.

instead opted for retirement. In *Alicea Rosado,* we held that a job transfer involving a loss of prestige was insufficient to constitute a constructive discharge, noting that:

> "[h]umiliation usually justifies an unlawfully discharged employee's lack of mitigation efforts ... only in cases where the effort would involve almost daily, face to face dealings with the alleged wrongdoer or where the nature of the substituted job is unreasonably inferior to his prior position. 11 Williston on Contracts § 1353 at 279 (3d ed. 1968)." *Id.* at 120, n. 4.

We also observed in *Alicea Rosado* that by accepting the transfer the plaintiff in that case would not have given up any policy making responsibilities because he had had none in his prior position. *Id.*

In this case, the word processing position offered Cazzola was still under the same supervisor who had criticized her, placed her on probation and found that she failed to meet the probationary requirements. She thus could have expected regular "face to face dealings" with that supervisor. She also would have been working as a subordinate in a department she created and previously ran, and she would have lost the policy-making responsibilities she had had as a supervisor. We think these factors distinguish this case from *Alicea Rosado,* and are enough to allow a jury to decide on the issue of constructive discharge.

■ Codman also makes a number of arguments regarding improper jury instructions, a prejudicial closing argument and insufficient evidence of wilfullness to support liquidated damages. We find all of these to be without merit. Codman failed to object after the charge to the absence of a mitigation instruction, *McGrath v. Spirito,* 733 F.2d 967 (1st Cir.1984), and made no objection at all to the other jury instructions and the closing argument with which it finds fault. We also think there is enough evidence in the record to support the finding of wilfulness.

*The judgment of the district court is affirmed, and the case is remanded for consideration of plaintiff's request for attorney's fees.*