EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff

v.

UNITED STATES STEEL, Defendant.

Civ. A. No. 85–1136–A.

United States District Court,
W.D. Pennsylvania.

Oct. 16, 1986.

Spencer H. Lewis, Jr., Regional Atty., E.E.O.C., Philadelphia, Pa., Amy Reynolds Hay, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Mark K. McNally, U.S. Steel Corp., Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

TEITELBAUM, District Judge.

The Equal Employment Opportunity Commission (EEOC) brought this action against United States Steel (USS) alleging a willful violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, arising from the layoff, during a reduction in force, of John W. Bales from his job as project analyst. Because Bales was laid off more than two years before the action was commenced, unless there was a willful violation of the Act triggering the three year statute of limitations under 29 U.S.C. § 626(e)(1), the action is time-barred. USS moves for summary judgment contending there is no genuine issue of material fact regarding the absence of a) any willful violation of the ADEA, or b) any violation whatsoever. For the reasons set forth, the motion must be granted.

During a 1982 reduction in force Bales was laid off from his job as project analyst. Bales had started working at USS in 1948 as a tracer (or blueprint operator). He left USS to perform military service in 1952–1953. He returned to USS in 1953 as a layout draftsman. In 1957 he was made a design draftsman. In 1967 he was promoted to associate research engineer and in 1972 he was promoted to research engineer. In 1978, during a reduction in force, Bales was demoted back to design drafts-man. Notwithstanding the demotion, Bales continued to do the same sort of project work he had done as a research engineer, instead of performing drafting work. In December, 1981 Bales was laterally reassigned to project analyst. In May, 1982 Bales was notified that the project analyst position was to be eliminated. In July, 1982 Bales was laid off.

From 1975 until April, 1980 Bales' actual and immediate supervisor was William A. Box. In April, 1980 Bales was placed under John E. Bower, Jr. for formal evaluation. Bales' last formal evaluation was completed in March, 1982 and covered his performance as a design draftsman in 1981.

USS made the decision to reduce its force in January, 1982. A two step procedure was used. First, it was determined what functions could be eliminated, and second, it was determined, based on performance, which individuals should be laid off. Following this procedure, management first decided that the project analyst position held by Bales could be eliminated. Bales' supervisor, Bower, then considered allowing Bales to bump back to the design draftsman slot. Bower compared Bales' performance as a design draftsman to the performance of four other design draftsmen. Because of Bower's assessment of Bales' performance, Bower recommended Bales for layoff.

EEOC concedes that the project analyst position was eliminated for legitimate, nondiscriminatory reasons. However, EEOC contends the negative evaluation of Bales' performance as a design draftsman was a pretext for age discrimination. Specifically EEOC contends Bower deliberately underrated Bales in March, 1982 in order to justify Bales' age-biased layoff.

The order and allocation of proof governing Title VII actions have been adapted to actions brought under ADEA.

> The plaintiff has the initial burden to establish a prima facie case of unlawful discrimination by a preponderance of the evidence. This prima facie case is easily

made out: a plaintiff alleging discriminatory layoff need only show that he is a member of the protected class and that he was laid off from a job for which he was qualified while others not in the protected class were treated more favorably.

*Massarsky v. General Motors Corp.,* 706 F.2d 111, 118 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983) (footnote omitted); see also *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1395, (3d Cir.), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984).

In *Massarsky* the plaintiff established a prima facie case of discriminatory treatment under the ADEA by showing that he was within the protected age class (47) and was laid off from his job as a process engineer even though he was qualified for that position, while a person considerably younger in age (25) and with less seniority was retained. 706 F.2d at 118. In *Duffy* proof that the plaintiff was within the protected age class (59) and discharged from his job as a salesman even though he was qualified for that position, while a younger employee (26) was retained, established a prima facie case of discriminatory treatment. 738 F.2d at 1395 n. 2.

Here Bales was within the protected age class (52) and not permitted to bump back to his prior job as design draftsman even though he was qualified for that position while three younger employees (Wilshire—38, Briney—46, Janosko—49) were retained [1] as design draftsmen. It will be assumed that this establishes a prima facie case of age discrimination.

After a plaintiff has established a prima facie case of age discrimination, the burden shifts to the defendant to dispel the adverse inference by articulating "some legitimate, nondiscriminatory reason for the employee's rejection."

*Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d at 1395 (citations omitted).

Here USS contends that Bales failed to perform the duties of the design draftsman job to the satisfaction of his supervisor even though Bales' abilities qualified him to work as a design draftsman.

Once the defendant satisfies the requirement of articulating a non-discriminatory reason for the employee's discharge, the ultimate burden remains with the plaintiff to prove to the trier of fact that the defendant intentionally discriminated against the plaintiff.

.  .  .  .  .

The employee may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d at 1395, 1396 (citations omitted).

Here not only must the EEOC show that USS's proffered explanation is a pretext for age discrimination, but also, because this case is predicated on a willful violation of the ADEA, EEOC must show that USS knew its conduct was prohibited by the Act or showed reckless disregard for whether its conduct was prohibited by the Act. *Slenkamp v. Borough of Brentwood,* 603 F.Supp. 1298, 1300 (W.D.Pa.1985) (reading "willful" as used in damages and statute of limitations provisions of the Act *in pari materia* [2]). Some evidence in addition to a

---

**1.** The ADEA does not require an employer to accord special treatment to employees within the protected class. *Williams v. General Motors,* 656 F.2d 120, 129 (5th Cir.1981) *cert. denied* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). The Act does not require an employer to place an employee in another position when that employee's position is eliminated for non-discriminatory reasons. *Stacey v. Allied Stores Corp.,* 768 F.2d 402, 408 (D.C.Cir.1985). However, an employer's decision not to consider an employee for another position may not be based on age. *Stacey v. Allied Stores Corp.,* 768 F.2d at 409. When an employer does choose to consider an employee for another position, the ADEA requires that the employer act in a non-discriminatory manner.

For completeness of the factual record the Court notes that by June, 1985 these three employees were laid off.

**2.** But see *EEOC v. Governor Mifflin School District,* 623 F.Supp. 734 (E.D.Pa.1985) (standards different; "willful" as used in statute of limita-

bare bones discrimination case is necessary. *Spanier v. Morrison's Management Services*, 611 F.Supp. 642, 646–647 (N.D. Ala.1985).

The issue thus raised is whether, on USS's motion for summary judgment, viewing the record in the light most favorable to EEOC and resolving all inferences, doubts and issues of credibility against USS, USS is entitled to judgment as a matter of law because there is no genuine issue of fact that Bales' negative performance evaluation was legitimate and non-discriminatory and there is no genuine issue of fact that USS did not knowingly or with reckless disregard violate the Act. That is, to put it another way, the issue is whether there is any evidence tending to show that Bales' performance evaluation was a pretext for age discrimination and that USS knowingly or with reckless disregard violated the Act.

EEOC contends that there are four indications that Bales' performance evaluation was a pretext for age discrimination: 1) the performance evaluation was inadequate; 2) the performance evaluation was tainted by an age-biased atmosphere; 3) the performance evaluation was invalid; and 4) the comparison of Bales' performance to the performance of the younger design draftsmen was inaccurate. Each of these four areas is discussed separately.

EEOC first contends Bales' performance evaluation was inadequate because Bales' supervisor during the relevant time period, Bower, lacked the technical competency to evaluate Bales' performance and did not spend enough time observing Bales to make an adequate evaluation of his performance. Assuming for purposes of USS's motion that these assertions are true, they prove no more than that USS made a poor business decision in having Bower evaluate performance. Moreover,

because Bower also evaluated the four other design draftsmen with whom Bales' performance was compared, any defect in the evaluation process affected all of the design draftsmen equally. That is, because Bower evaluated all the design draftsmen, Bales cannot complain of disparate treatment.

EEOC's second contention is that the performance evaluation was tainted by an age-biased atmosphere. Specifically, EEOC asserts that a) during the mid 1970's USS management stated the age level in the lab was too high; b) in the late 1970's Bower heard discussions regarding the average age at the lab; c) in the past Bower was informed by subordinates that they believed younger people got promotions; d) around the time of the 1982 reduction in force management people said that the average age at the lab was too old;[3] e) the other individual selected by Bower for layoff was, like Bales, eligible for a pension; f) the official who approved of Bower's selection of Bales for layoff, Patula, knew that Bales was eligible for a pension. Again for purposes of this motion it is assumed that each of these assertions are true.

To prove an ADEA violation there must be some evidentiary connection between age-biased statements and the decison-maker's motivation for the adverse employment decision. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1412–1413 (7th Cir.1984); *Stendebach v. CPC International Inc.*, 691 F.2d 735, 738 (5th Cir.1982), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983). Here the first three assertions of age-biased atmosphere are not connected in time with the 1982 reduction in force (mid 1970's, late 1970's, in the past) and the second and third assertions are not even attributed to management generally, much less to Bower specifically. Most damaging

tions provision means defendant knew the ADEA was "in the picture".)

**3.** Box June 10, 1986 affidavit ¶ 13; but see Box June 17, 1986 affidavit p. 3. For purposes of USS's motion, the evidence must be viewed in the light most favorable to EEOC.

to USS's position is, of course, the fourth assertion that around the time of the 1982 reduction in force management people said that the average age at the lab was too old, particularly when coupled with the fifth assertion that the other individual selected by Bower for layoff was, like Bales, pension eligible. However, even this evidence of an age-biased atmosphere cannot, standing alone, establish a violation of the ADEA. Even EEOC appears to recognize and concede this point: in its brief in opposition to USS's motion, EEOC begins its argument on "age-biased atmosphere" with the statement: "Moreover, the legitimacy of Mr. Bower's evaluation of Mr. Bales is tainted by circumstances that *may have contributed* to Mr. Bower's giving Mr. Bales a less than accurate evaluation to get rid of him because of his age." (Emphasis added). Thus, the crux of the matter is the validity of Bower's evaluation of Bales' performance.

EEOC's third contention is that the performance evaluation was invalid. This invalidity, according to EEOC, is shown by the inconsistency between Bower's written performance evaluation and Bower's later deposition testimony concerning Bales' performance. This invalidity is further shown, according to EEOC, by the inconsistency between the high evaluations of Bales' performance by Bales' former supervisor, Box, and the negative evaluations of Bales' performance by Bower during the 1982 reduction in force.

EEOC points to Bower's deposition testimony:

"John Bales was a class 15 design draftsman, but I don't believe he exhibited class 15 attributes at all that year [1981].... He was not a self-starter, he did not perform thoroughly, he did not perform expeditiously. Also, he, I don't believe, showed his adaptability." (Plaintiff's memorandum in opposition to de-

fendant's motion for summary judgment, at 11).

On Bales' written performance evaluation for 1981, Bowers indicated Bales was "reliable and conscientious" but not a "self-starter"; that Bales' quantity of work was "below average"; and that Bales "readily adapts" but was not "highly adaptable." Assuming Bower's written performance evaluation is inconsistent with Bower's later deposition testimony, it is obvious that such inconsistencies are minimal and do not impair the validity of the written performance evaluation.

EEOC also asserts the invalidity of Bales' performance evaluation is shown by the inconsistency between the high performance evaluations previously given by Box and the negative evaluation given by Bower. When Bales was demoted to design draftsman in 1978 he continued to do the same sort of project work he had done as a research engineer. Bales excelled at this work and it was on this work that Box evaluated Bales' performance. However, when Bower later evaluated Bales it was not on Bales' project work, but rather on Bales' design work. Box felt it was unfair of Bower to evaluate Bales' performance only as a draftsman because Bales had not been doing drafting for at least ten years and for that reason Bales' initial productivity may have been lower, but even Box conceded that in general he agreed with Bower's evaluation of Bales' performance on design work. Thus, the inconsistency between Box's high evaluations and Bower's negative evaluations proves no more than that each supervisor rated Bales' performance on a different kind of work.[4] On the other hand, the consistency between Bower's negative evaluation of Bales during the 1982 reduction in force and Bower's negative evaluation of Bales in February, 1981, almost a year before USS decided to reduce its force, tends to establish the le-

---

4. Again in this connection it is significant to note that EEOC concedes that the project work was eliminated for legitimate, non-discriminato-ry reasons and the only work available to Bales was design work.

gitimacy of Bower's 1982 evaluation. It was because of Bower's negative evaluation of Bales in February, 1981 that Bales was laterally reassigned from design draftsman to project analyst.

EEOC's fourth contention is that the comparison of Bales' performance to the performance of the younger design draftsmen was inaccurate. Wilshire and Janosko were rated above Bales. Briney was rated as "satisfactory in present position" and Bales as "good potential" but "does not function well as a design draftsman." It appears that EEOC, with this contention, proves too much. With the legitimate elimination of project work, the only position available to Bales was design draftsman.

There is no genuine issue of material fact regarding absence of a willful violation of the ADEA.[5] In reaching this conclusion the Court is mindful that summary judgment is rarely appropriate in a case such as this, *see e.g. EEOC v. Westinghouse Electric Corp.*, 725 F.2d 211, 218 (3d Cir.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984), but nonetheless is constrained to conclude that there is no evidence that USS willfully violated the ADEA and that USS is therefore entitled to judgment as a matter of law.

An appropriate order will be entered.

---

**5.** Even assuming the more lenient "in the picture" standard for a "willful" violation were to apply, see n. 2 *supra,* the Court would nevertheless reach the same conclusion.