**Jonah OXMAN, on Behalf of Himself and Numerous Others Who Are Similarly Situated, Plaintiff,**

v.

**WLS–TV, Defendant.**

No. 84 C 4699.

United States District Court, N.D. Illinois, E.D.

Aug. 13, 1986.

Gilbert Feldman, Cornfield & Feldman, Chicago, Ill., for plaintiff.

Daniel J. King and Richard C. Bollow, Jenner & Block, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This is our third opinion in this age discrimination suit. *See Oxman v. WLS–TV,* 609 F.Supp. 1384 (N.D.Ill.1985) ("Oxman II"); *Oxman v. WLS–TV,* 595 F.Supp. 557 (N.D.Ill.1984) ("Oxman I"). Our first two opinions rebuffed defendant WLS–TV's attempts to dismiss this suit, once on a motion to dismiss and once on summary judgment. We will not repeat the facts here, which are set out fully at 609 F.Supp. at 1386–87. WLS–TV has now moved to reconsider the denial of summary judgment. For the reasons stated below, we redesignate WLS–TV's motion as a renewed motion for summary judgment (rather than one for reconsideration) and grant it.

WLS–TV's motion rests on two things that happened since our last opinion, one legal and one factual. First, it claims that recent Seventh Circuit opinions conflict with the legal analysis in our opinion and warrant summary judgment in its favor. Second, WLS–TV argues that plaintiff Jonah Oxman conceded certain facts in the joint pretrial order that are fatal to his claim. Except for the change in the law, WLS–TV does not argue that our previous opinion was wrong (although it no doubt believes so). Instead, in seeking summary judgment it points to the changes since we issued that opinion. We therefore construe its motion not as a request that we reconsider our opinion, but rather as a renewed motion for summary judgment based on new circumstances. We will view its motion under the strict and familiar standards of Fed.R.Civ.P. 56, which are set forth in *Oxman II. See* 609 F.Supp. at 1387.

Before addressing WLS–TV's arguments, we at the outset reject Oxman's weak and unsupported argument that WLS–TV is somehow barred from renewing its motion. A party *denied* summary judgment may renew the motion if he or

she has something new to offer, even if it could have been offered sooner. *See, e.g., Kirby v. P.R. Mallory & Co., Inc.*, 489 F.2d 904, 913 (7th Cir.1973), *cert. denied*, 417 U.S. 911, 94 S.Ct. 2610, 41 L.Ed.2d 215 (1974). Of course, a court may look askance at such a motion if it really says nothing new. The "law of the case" doctrine may operate in such a situation. But if the renewed motion is based on new events or facts, a court has every reason to entertain the motion, for as with any summary judgment motion, it allows the possibility that the court and the parties can avoid the time and cost of an unnecessary trial. Here, WLS–TV does rely on changed circumstances, and so we turn to its motion.

WLS–TV first argues that the law significantly changed after *Oxman II*. In that opinion, we discussed the rather confused state of the law in the so-called "reduction-in-force" lines of cases, and chose to use liberal criteria for a plaintiff to meet in establishing a *prima facie* case of discrimination. *See* 609 F.Supp. at 1389–91. We rejected a formula which would have required that in order to make out a *prima facie* case, plaintiff must produce evidence of intent to discriminate. *Id.* at 1390. Shortly after *Oxman II*, the Seventh Circuit issued an opinion adopting a more restrictive approach without any discussion, despite a concurring opinion by Judge Flaum using an analysis similar to ours. *See Matthews v. Allis Chalmers*, 769 F.2d 1215 (7th Cir.1985). The Seventh Circuit now requires some evidence of intent at the *prima facie* stage of reduction-in-force cases. *See Mathews*, 769 F.2d at 1217; *also Dorsch v. L.B. Foster Company*, 782 F.2d 1421, 1424 (7th Cir.1986).

As we noted in *Oxman II*, this case defies easy categorization within the normal doctrinal framework. *See* 609 F.Supp. at 1388. Although we said this case was "most akin" to the reduction-in-force cases,

*id.* at 1389, and we applied a formula from those cases, this case does not really fit the reduction-in-force paradigm. In that typical case, an employer eliminates several positions, and the employees cast adrift vie for remaining openings. Here, as we described, we have a "reduction-in-force" of one. Arguably, this case should have its own *prima facie* formula, not subject to the intent requirement of *Matthews*. We need not decide that issue, because as we shall describe, it is not the intent requirement of *Matthews* that is fatal to Oxman's case.

We described in *Oxman II* how the more restrictive formula (later adopted in *Matthews*) effectively collapses stages one and three of the *McDonnell-Douglas* formula. *See* 609 F.Supp. at 1390. By requiring evidence of intent for the *prima facie* case, a court essentially makes a plaintiff prove at step one what he often must prove at the third or "pretext" step. In *Oxman II*, we held that Oxman had produced evidence of intent at the pretext stage, the statement that WLS–TV's News Director, William Applegate, allegedly made to Oxman. *See id.* at 1394. This evidence would likely suffice as evidence of intent at the *prima facie* level as well, bearing out our prediction that the restrictive approach merges the *prima facie* and pretext stages and distorts the integrity of the *McDonnel-Douglas* formula. The problem for Oxman therefore does not derive from the cases decided after *Oxman II*, *Matthews* and *Dorsch*. Rather, the problem comes more from WLS–TV's second asserted ground for summary judgment.

Under the ADEA, as interpreted by the Seventh Circuit in *LaMontagne v. American Convenience Products, Inc.*, 750 F.2d 1405 (7th Cir.1984), a court must ask not only whether someone had intent to discriminate against an employee, but *who* that someone was.[1] In *LaMontagne* there

---

1. At this point, we should make an important qualification. *LaMontagne's* analysis applies only when the issue of intent is relevant. As discussed in *Oxman II*, the normal *prima facie* case does not require proof of intent. But even

in the typical discrimination case, intent may become relevant in two ways. First, intent may be relevant to proving that an employer's proffered reasons for the job decision are pretextual. Second, it may be relevant to proving discrimi-

was evidence that a superior of the plaintiff wanted plaintiff out because of his age. But the evidence showed that the superior did not make the decision to fire plaintiff (defendant's president did), and although the president consulted the superior, there was no evidence that the superior actually influenced the decision. By itself, the superior's statement was not sufficient to allow a jury to conclude that the president, who made the decision, considered age in making it. The Court so held, even though the superior purportedly made the discriminatory statement *to the president.*

■ As WLS–TV points out, the pretrial order reveals that this case is very much like *LaMontagne.* The Statement of Uncontested Facts ("Facts") acknowledges that Dennis Swanson, the Station Manager, *not* Applegate, was ultimately responsible for "all of the operation and the business of WLS–TV, including the hiring and firing of Station personnel." Facts, ¶ 10. Moreover, *Swanson* decided to close out Oxman's position because of cost inefficiency, and "*Swanson* at that time made the decision to terminate Oxman." Facts, ¶ 14 (emphasis added). We find these concessions fatal under *LaMontagne,* and in fact this case is weaker than *LaMontagne.* Just as in *LaMontagne,* the evidence reveals that the person allegedly harboring the discriminatory intent was not the person making the termination decision. Here the case is weaker because no evidence here suggests that the person with the bad intent, Applegate, communicated his animus to the decisionmaker, Swanson. *LaMontagne* reaches the narrow conclusion that in cases like this, where there is no evidence that the *decisionmaker* had discriminatory intent or was improperly influenced, a court cannot attribute one person's intent to another. Oxman may be correct that this makes it difficult to establish corporate liability in some cases, but that is what *LaMontagne* commands and this Court is bound.

Oxman tries to avoid *LaMontagne* by arguing that Applegate played a role in Oxman's firing. But even though Applegate told Oxman he was fired and signed his "pink slip," it remains the fact that Swanson made the decision. Under the ADEA and *LaMontagne,* it is who makes the firing decision that is important, not who implements it. True, *LaMontagne* mentions that the decisionmaker implemented the firing, 750 F.2d at 1412 (president alone decided to fire and he "alone carried out the decision"). But we do not think *LaMontagne* thereby implies that the decisionmaker *must* carry out the decision. That fact bolstered the court's conclusion but does not appear necessary to it. It is the *decision* that is crucial, and no evidence suggests Applegate influenced Swanson. That Swanson may have consulted Applegate is not by itself relevant under *LaMontagne,* in light of the concession that Swanson made the ultimate decision.

■ Thus, we are left with a lack of evidence that the responsible decisionmaker had the intent to discriminate on the basis of age. Quite possibly, this would mean that Oxman could not meet the reformulated *prima facie* case of *Matthews,* assuming it applies. But even if Oxman somehow managed to sneak by that barrier, his case would now fail at the pretext stage. It was clear that the main piece of evidence sparing Oxman from summary judgment earlier was Applegate's evidence. *See* 609 F.Supp. at 1394. We considered other bits of circumstantial evidence then, but Applegate's statement infused that evidence with significance. *Id.* (other pieces of evidence, "benign in isolation," take on meaning when considered together with Applegate's statement). We have held now that Applegate's statement is irrelevant under *LaMontagne.* Lacking that bedrock, that crucial piece of evidence, Oxman simply does not have enough evidence to create a genuine factual issue that WLS–TV's legitimate reasons for terminating him were pretextual as defined in *Oxman II,*

nation directly, without resort to the three-step "*McDonnell-Douglas*" formula. *LaMontagne*

considers intent in both of those contexts. *See* 750 F.2d at 1412, 1414.

609 F.Supp. at 1393.[2] Accordingly, it is now proper to enter summary judgment in WLS–TV's favor.

In conclusion, WLS–TV's renewed motion for summary judgment is granted. It is so ordered.

---

**2.** Although *LaMontagne* applied its intent analysis under a direct method of proof, it repeated that analysis in following the indirect method. *See* 750 F.2d at 1414. Specifically, it applied the analysis in deciding the pretext issue. We do the same here.