12 F.3d 652
 63 Fair Empl.Prac.Cas. (BNA) 844,
63 Empl. Prac. Dec. P 42,721
Jonah OXMAN, Plaintiff-Appellant,
v.
WLS-TV, Defendant-Appellee.
 No. 93-1347.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 21, 1993.
Decided Dec. 15, 1993.
 
 Gilbert Feldman (argued), Cornfield & Feldman, Chicago, IL, for plaintiff-appellant.
 Richard C. Bollow (argued), Jenner & Block, Chicago, IL, for defendant-appellee.
 Before POSNER, Chief Judge, and CUMMINGS and CUDAHY, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 On January 27, 1984, WLS-TV, a Chicago television station, dismissed Jonah Oxman, a seventeen-year employee of the station. At the time of his dismissal Oxman was the Bureau Manager of WLS-TV's only satellite news office, the Northwest News Bureau. Mr. Oxman soon brought suit against WLS-TV alleging, among other things, that he had been discriminated against on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621, et seq. ("ADEA").[1] The district court eventually granted summary judgment in favor of defendant WLS-TV on this claim, applying the formulation of the prima facie case for reduction-in-force cases set out in Matthews v. Allis-Chalmers, 769 F.2d 1215 (7th Cir.1985), see Oxman v. WLS-TV, 641 F.Supp. 652 (N.D.Ill.1986). On appeal this Court modified the Matthews formulation, holding that a plaintiff can establish a prima facie case "by showing that he was in the protected age group, that he was performing according to his employer's legitimate expectations, that he was terminated, and that others not in the protected class were treated more favorably." Oxman v. WLS-TV, 846 F.2d 448 (7th Cir.1988) (Oxman III ).[2] Employing this new standard, we determined that Oxman had established a prima facie case and had adduced sufficient evidence to create a genuine issue of material fact that WLS-TV's proffered reasons for terminating him were pretextual. Id. at 456-457. Soon thereafter the district court referred Oxman's case to a magistrate judge who, sitting as a Special Master, conducted an evidentiary hearing pursuant to a Minute Order of July 25, 1989. The magistrate judge filed a fifty-seven page Report and Recommendation containing findings of fact and conclusions of law. Magistrate Judge Rosemond concluded that
 
 
 2
 Oxman ha[d] not shown by the preponderance of the evidence that the reasons offered by WLS-TV for his termination were not its true reasons but were merely a pretext for age discrimination. In other words, Oxman [did] not disprove[ ] the explanations offered by WLS-TV for its actions ... Oxman could have shown that WLS-TV's proffered reasons had no basis in fact, or if they did, that they were not really factors motivating the discharge, or if they were, that they were jointly insufficient to motivate the discharge. He was unable to make such a proof or any other.
 
 
 3
 Magistrate Judge's Report at 52-53 (citations omitted). Having decided that Oxman had not satisfied his burden of persuasion, the magistrate judge recommended that judgment be entered in favor of the defendant. Over Oxman's objections, the Report and Recommendation was adopted by the district court and judgment was entered in favor of WLS-TV.[3] Oxman now appeals that determination. For the reasons set forth below, the judgment of the district court is affirmed.
 
 Background
 
 4
 The essential facts of Oxman's case are set out in Oxman III, 846 F.2d 448; see also Oxman II, 609 F.Supp. 1384. To avoid needlessly cluttering the pages of the Federal Reporter, they are not set out at length again here. Rather, the facts are recounted only briefly here and will be set out in detail elsewhere in this opinion only when necessary to this Court's determination.
 
 
 5
 When WLS-TV decided to close its Northwest News Bureau in 1984, Oxman was 61 years old. In his seventeen years at the station Oxman held a variety of positions and his performance during this time was considered satisfactory. When Oxman learned that his bureau was to be closed, but before he learned that he was to be terminated, various positions at the station became available. Other positions also became available after Oxman's termination. He was considered for the post of Assignment Editor, the one position available at the time of his discharge. The job was eventually offered to Edward Epstein, an editor at the Chicago Sun-Times. Oxman also suggested to Assistant News Director William Applegate that he be considered for a position as a producer. Although no such position was available, Applegate told Oxman he was not qualified for the position--emphasizing how complex the television news business had become since Oxman had last tried his hand at producing. He was offered none of the positions that became available before or after his termination.
 
 Analysis
 
 6
 In 1988 this Court returned Oxman's case to the district court in order for it to resolve issues of material fact central to Oxman's claim that his termination was motivated by age. Rather than merely address these factual disputes, on remand Oxman argued completely new theories of his case, something he does again in this appeal. This repeated recharacterization of the dispute has made the case unnecessarily difficult and is probably in part to blame for the extended life of this controversy. Most significantly, although Oxman contended in his last appeal that he had been discharged because of his age and asked this Court that he be allowed to demonstrate that WLS-TV's reduction in force was a pretext for discrimination, Oxman now contends that the magistrate judge erred by employing a reduction-in-force analysis to his case. Similarly, although Oxman has never before argued that the Price Waterhouse doctrine[4] should be applied to his case, he contends in this appeal that the magistrate judge's determination should be overturned for failing to employ that doctrine. These new theories and others raised by Oxman's brief are addressed below. Oxman makes other claims of error, the most important of which are: (1) that the magistrate judge did not weigh the evidence "in its totality;" (2) that his conclusions regarding WLS-TV's failure to place him in another position were incorrect; and (3) that an adverse inference should have been drawn from WLS-TV's failure to produce certain witnesses. Each of these contentions is addressed below.
 
 
 7
 This Court's review of questions of law is de novo. Ambrosino v. Rodman & Renshaw, Inc., 972 F.2d 776, 786 (7th Cir.1992). We will not, however, disturb findings of fact unless they are clearly erroneous--where the lower court's " 'account of the evidence is plausible in light of the record viewed in its entirety,' the reviewing court [will] not reverse merely because it would have 'weighed the evidence differently.' " Id. (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518).
 
 
 8
 I. The Application of a Reduction-In-Force Analysis.
 
 
 9
 Oxman first contends that the magistrate judge erred by applying a reduction-in-force analysis to his case--the "case sub judice," Oxman amazingly asserts, "is not a reduction-in-force case." This claim could mean one of several things.[5] The most obvious interpretation is clearly wrong. If Oxman's contention is that applying a reduction-in-force analysis to the facts of this case is inappropriate, he would be well advised to reread this Court's previous opinion in his case. In Oxman III, the Court made clear that although Oxman's case was not a true reduction-in-force situation, a reduction-in-force analysis was appropriate. 846 F.2d at 457. In fact the Oxman III court modified the reduction-in-force analysis to Oxman's advantage. Id. at 454-455. Oxman's contention that this is not a reduction-in-force case could also mean that he believes that his case is not about his discharge but rather about WLS-TV's failure to hire him for any of the various positions available before and after his discharge. See, e.g., Br. at 27 (Oxman claiming that the magistrate judge should not have treated his case as "a reorganization reduction-in-force case [but] rather [as] a hiring or rehiring case"). If this is what Oxman means, he is wrong again. Despite his efforts to recharacterize his case, Oxman's case is primarily about his discharge. Cf. Oxman III, 846 F.2d 448. Since Oxman's discharge was at issue,[6] the magistrate judge's exploration of WLS-TV's claim that Oxman's termination was part of a reduction in force was completely proper. This Court finds no error in the application of a reduction-in-force analysis to the facts of this case.
 
 
 10
 Oxman's real argument, however, appears not to be that his case was improperly characterized as a reduction-in-force case, but rather that the reduction-in-force analysis was improperly applied below. Oxman claims that the magistrate judge erred by imposing a "greater burden" of proof on a defendant "who has been terminated amidst corporate reorganization" than on an employee terminated for other reasons. Magistrate Judge's Report at 52 (citing Aungst v. Westinghouse Electric Corp., 937 F.2d 1216, 1220-1221 (7th Cir.1991)). While the magistrate judge did appear to impose an improper burden in this case, he made clear that Oxman would not have met even a lower burden of proof.
 
 
 11
 The reduction-in-force analysis set out in Oxman III is merely the application of the burden-shifting method of proof laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, to a specific situation, here a corporate downsizing. Under the burden-shifting method, if the discharged plaintiff establishes a prima facie case, the defendant must articulate a non-discriminatory reason for its actions; and if the defendant fulfills this burden of production, the burden shifts back to the plaintiff to prove that the explanation offered by defendant for his dismissal was not the defendant's true reason but was merely a pretext for discrimination. See, e.g., La Montagne v. American Convenience Products, Inc., 750 F.2d 1405, 1409 (7th Cir.1984). Thus like any other plaintiff proceeding by way of the McDonnell Douglas method, a plaintiff in a reduction-in-force case bears the ultimate burden of demonstrating that his employer's stated reasons for discharging him are pretextual.
 
 
 12
 Relying on Aungst, the magistrate judge imposed a greater burden on Oxman, requiring him not merely to rebut WLS-TV's proffered explanation of its actions, but to come forward with actual "direct, circumstantial, or statistical evidence that age was a factor in his termination." Magistrate Judge's Report at 52 (citing Aungst, 937 F.2d at 1220-1221). The magistrate judge's reliance on Aungst is, however, misplaced. The Aungst court's imposition of a "greater burden" on plaintiffs in reduction-in-force cases was not necessary to its determination. See Aungst, 937 F.2d at 1223 ("[Aungst] did not meet [his] basic [McDonnell Douglas] burden ..."). Moreover, the Aungst court relied on Sixth Circuit opinions that were implicitly rejected by the reasoning of Oxman III. Id. at 937 (citing Ridenour v. Lawson Co., 791 F.2d 52 (6th Cir.1986) and Simpson v. Midland Ross Corp., 823 F.2d 937 (6th Cir.1987)). The additional burden Aungst imposes on reduction-in-force plaintiffs undermines a central purpose of the McDonnell Douglas approach--"to relieve plaintiff of the burden of having to uncover what is difficult to uncover--evidence of discriminatory intent." Oxman III, 846 F.2d at 454-455. The McDonnell Douglas approach allows victims of discrimination to prevail without presenting any evidence of discrimination. As this Court has recognized:
 
 
 13
 "Age discrimination may be subtle and even unconscious. Even an employer who knowingly discriminates on the basis of age may leave no written records revealing the forbidden motive and may communicate it orally to no one. When evidence is in existence, it is likely to be under the control of the employer, and plaintiff may not succeed in turning it up. The indirect method [of proof] compensates for these evidentiary difficulties by permitting the plaintiff to prove his case by eliminating all lawful motivations, instead of proving directly an unlawful motivation."
 
 
 14
 Oxman III, 846 F.2d at 453 (quoting La Montagne v. American Convenience Products, Inc., 750 F.2d at 1409). Thus under the McDonnell Douglas approach,
 
 
 15
 "if a plaintiff convinces the trier of fact that it is more likely than not that the employer did not act for its proffered reasons, the employer's decision remains unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent."
 
 
 16
 Id. (quoting Ayala v. Mayfair Molded Products Corp., 831 F.2d 1314, 1319 (7th Cir.1987)). By requiring plaintiffs to produce affirmative evidence of discriminatory intent, Aungst runs afoul of the carefully crafted McDonnell Douglas scheme. Despite Aungst's assertions to the contrary, plaintiffs in reduction-in-force cases bear no greater burden of proof than other ADEA plaintiffs. As a practical matter, direct evidence of discriminatory intent might be the only evidence that would convince a trier of fact that a corporate reorganization--particularly a large-scale one--was pretextual. McDonnell Douglas makes clear, however, that presenting this "smoking gun" is not required for a plaintiff to succeed.
 
 
 17
 Despite the magistrate judge's improper reliance on this aspect of Aungst, Oxman's claim fails. The magistrate judge found not only that Oxman failed to "meet the 'greater burden' of specific evidence of pretext required in a reorganization or reduction in force case," but also that Oxman did not meet his "basic burden" of showing that WLS-TV's economic explanations were mere pretext for age discrimination. Magistrate Judge's Report at 53-54; id. at 52 ("Oxman has not shown by the preponderance of the evidence that the reasons offered by WLS-TV for his termination were not its true reasons...."). The district court came to a similar conclusion. District Court's Memo. Op. at 4 n. 5 ("[I]t is clear from the Report that even without the benefit of the doubt, the Magistrate Judge's findings ... amply support his conclusion that Oxman's evidence was insufficient to demonstrate pretext."). Since the magistrate judge and the district court determined as a matter of fact that Oxman had failed to satisfy even the lower McDonnell Douglas burden, Oxman's claim that the magistrate judge erred by placing a "greater burden" on him must fail.
 
 
 18
 II. The Failure to Employ a Price Waterhouse Analysis.
 
 
 19
 Oxman next argues that the magistrate judge should have applied the analysis adopted in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775. Under that case, "once the plaintiff in a civil rights case has shown that a forbidden purpose was a substantial factor in the decision to fire him, the burden shifts to the employer to persuade the court that the plaintiff would have been fired anyway...." Visser v. Packer Engineering Assoc., 924 F.2d 655, 658 (7th Cir.1991). Price Waterhouse is applicable to age discrimination claims. Id. Although the magistrate judge determined that age was a motivating factor in WLS-TV's decision to discharge him, Oxman's contention that he should have employed a Price Waterhouse "mixed motives" analysis is surprising: At no time prior to his hearing has Oxman contended that Price Waterhouse applied here. Instead he has previously claimed just the opposite: he has asserted that he did "not believe [Price Waterhouse] was applicable to the instant case" and did not believe the case was "instructive as to the correct framework for hearing and evaluating evidence." See Supplemental Trial Brief R. 116, p. 3 & n. 1. Having led the lower court to believe that Price Waterhouse was inapplicable or at least irrelevant, Oxman waived any claim that said case should form the basis of the lower court's determination. Cf. Stern v. United States Gypsum, 547 F.2d 1329, 1333-1334 (7th Cir.1977), certiorari denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467.
 
 
 20
 III. The Failure of the Magistrate Judge to Consider the
 
 
 21
 Evidence "in its Totality."
 
 
 22
 Oxman also contends that the magistrate judge failed to weigh the evidence of discrimination "in its totality," and instead analyzed the evidence "piecemeal." However, the magistrate judge clearly understood that his mission was to "view[ ] the evidence in its totality." Magistrate Judge's Report at 49 (citing Hybert v. Hearst Corp., 900 F.2d 1050, 1054 (7th Cir.1990)). Oxman's contention therefore must be that the magistrate judge did not fulfill the stated objective. This argument takes two forms: first, Oxman argues that if the magistrate judge had properly weighed the evidence before him (i.e. "in its totality" rather than piecemeal), Oxman would have prevailed; second, Oxman argues that the magistrate judge failed to consider certain evidence that--if taken together with the evidence the magistrate judge did rely on--would have required a determination in his favor.
 
 
 23
 A. The Magistrate Judge's Failure to Weigh the Evidence
 
 
 24
 Properly.
 
 
 25
 As proof of his claim that the magistrate judge's weighing of the evidence before him was mistaken,[7] Oxman offers a string of reduction-in-force cases in which age discrimination was found under circumstances purportedly similar to his own (Br. at 36-37). Oxman's reliance on these cases is misplaced. Several of them merely hold that when viewed in the light most favorable to the plaintiff the evidence established a genuine issue of material fact as to the existence of discrimination. See, e.g., Montana v. First Fed. Savings & Loan Assoc., 869 F.2d 100 (2d Cir.1989) (reviewing grant of summary judgment in favor of defendant). These cases are clearly of no help to Oxman: Oxman has already survived summary judgment several times, and the district court has now decided the case on its merits. Other cases cited by Oxman establish only that the trier of fact's determination must be respected if sufficient evidence exists to support it. See, e.g., Hansard v. Pepsi-Cola Metropolitan Bottling Co., 865 F.2d 1461 (5th Cir.1989) (since sufficient evidence existed to support jury's determination, district court's denial of motion for judgment n.o.v. was appropriate), certiorari denied, 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89; Cazzola v. Codman & Shurtleff, Inc., 751 F.2d 53 (1st Cir.1984) (denial of motion for new trial and judgment n.o.v. affirmed since jury determination was based on more than a "mere scintilla of evidence"); Burlew v. Eaton Corp., 728 F.Supp. 529 (E.D.Wis.1989) (denying motion for judgment notwithstanding the verdict or new trial since sufficient evidence existed to support the jury's conclusions). That the particular evidence in each of these cases supported a finding of discrimination in no way constrains this trier of fact from deciding otherwise on the facts presented here. Perhaps if multiple triers of fact had determined based on evidence substantially the same as that adduced by Oxman that discrimination had occurred, this Court would be compelled to conclude that such determination was the only reasonable one. The cases offered here, however, are not sufficiently similar to Oxman's. Moreover, the magistrate judge's determination in this case could clearly be supported by his findings of fact. Since the determination is not obviously in error, it will not be disturbed.
 
 
 26
 B. The Magistrate Judge's Failure to Consider Certain Direct
 
 
 27
 Evidence of Discrimination.
 
 
 28
 Oxman next complains that the magistrate judge erroneously ignored direct evidence of discrimination[8]--evidence which if considered would have both satisfied Oxman's burden under McDonnell Douglas to show that WLS-TV's proffered reasons for discharging him were pretextual, and simultaneously obviated the need to employ the McDonnell Douglas analysis at all by providing Oxman with direct evidence of discrimination. At issue are two statements made by WLS-TV personnel to Oxman.
 
 
 29
 The first of these is a statement by News Director William Applegate that the television business had grown so complex in recent years that even if Oxman had been offered an available position, WLS-TV "would know within a week that ... [Oxman was] unable to do the job and that [he] would then still be out of a job." Oxman III, 846 F.2d at 456. Even if this Court were to assume that this ambiguous statement reflects Applegate's belief that Oxman could not, because of his age, handle the fastpaced television news business (an assumption the magistrate judge appeared hesitant to make, Magistrate Judge's Report at 14-16), Applegate's statements were properly excluded from consideration. As the district court held:
 
 
 30
 Applegate's statements to Oxman do not constitute direct evidence of discrimination ... because they do not evidence a discharging official's discriminatory intent. Oxman has stipulated that [Vice President and General Manager Dennis] Swanson, not Applegate, had exclusive authority to fire employees. Report at p 13. Moreover, Applegate's statements were not made in the course of carrying out Swanson's directive, but were made five days after he told Oxman of the discharge. Furthermore, there is no evidence that the comments reflected any prior conversation with Swanson.
 
 
 31
 District Court Memo. Op. at 2 n. 2. In Oxman III, this Court held that it was reasonable to infer that Applegate's statements reflected Swanson's opinions, but that such an inference is not mandated. Oxman III, 846 F.2d at 456. This Court understands the district court to have concluded that the inference was not supported by the evidence adduced at the hearing. This conclusion is not clearly erroneous. That Applegate's statements were not considered is therefore entirely appropriate.
 
 
 32
 This Court also concludes--and for similar reasons--that the magistrate judge properly determined that a statement by Assistant News Director James Hattendorf was not evidence of discrimination. Hattendorf told Oxman that he wanted Oxman "to know that we had a cameraman in Los Angeles who sued on an age discrimination case and he lost." Magistrate Judge's Report at 18. The magistrate judge concluded that "no unlawful significance could be attributed to this remark" because Hattendorf, like Applegate, was not the final decision-maker and the record did not indicate that the statement reflected his superior's intention. Id. at 18-19; accord id. at 53 ("[T]here is no evidence that Hattendorf had any input with Swanson regarding Oxman's termination or otherwise influenced Swanson's decision in any way."). The magistrate judge's findings are reasonable, and it was therefore appropriate that the Hattendorf evidence not be considered.
 
 
 33
 IV. Determinations Regarding WLS-TV's Failure to Offer Oxman
 
 
 34
 Another Position at the Station.
 
 
 35
 WLS-TV filled various vacancies in its news department in the period after it began to consider closing the Northwest News Bureau. Oxman alleges that WLS-TV's failure to offer him any of these positions was both discriminatory in itself and evidence that when WLS-TV terminated his position it acted with a discriminatory intent. Oxman contends that the magistrate judge erred when he
 
 
 36
 (1) determined that WLS-TV did not discriminate against him based on his age by failing to transfer him to positions available at or before his termination or to (re)hire him for positions available after his termination and
 
 
 37
 (2) held that WLS-TV's failure to offer or consider him for these various positions was not sufficient to demonstrate that the station's reorganization was a pretext for age discrimination.
 
 
 38
 Prior to its determination to close the Northwest News Bureau, WLS-TV filled several vacancies. Magistrate Judge's Report at 19-20. Oxman was neither considered for nor offered these positions. Id. at 20. WLS-TV's failure to offer or even consider Oxman for the available positions was not in itself discriminatory: since WLS-TV had not yet decided to close the Northwest News Bureau (Magistrate Judge's Report at 23-24), it had no reason or obligation to consider the head of that bureau for another position. Cf. McDonald v. Krajewski, 874 F.2d 454, 455 (7th Cir.1989); Stacey v. Allied Stores Corp., 768 F.2d 402, 408 (D.C.Cir.1985). Oxman also contends that the magistrate judge erred by ruling that he could not pursue his failure to rehire claim because the claim had not been alleged in his charge. As Oxman's failure to rehire claim was not reasonably related to the termination claim originally filed, the magistrate judge's ruling must be upheld. Cf. Herman v. National Broadcasting Co., Inc., 744 F.2d 604, 606 (7th Cir.1984), certiorari denied, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782.
 
 
 39
 Neither did WLS-TV discriminate against Oxman by failing to offer him the position available at the time of his termination. The magistrate judge determined that the only position available at the time Oxman was terminated was that of Assignment Editor, a position for which Edward Epstein was hired. (WLS-TV was bound by an agreement with an incoming anchorman, John Drury, to hold the only other vacant position open for Drury's personal writer.) Magistrate Judge's Report at 24-26. The magistrate judge concluded that Oxman failed to demonstrate that WLS-TV's proffered reason for hiring Epstein--that Epstein was more qualified--was pretextual. Since the magistrate judge's determination was not clearly erroneous, it will not be disturbed.
 
 
 40
 The magistrate judge also concluded that WLS-TV's failure to offer Oxman a position at any point before or after its decision to close the Northwest News Bureau was insufficient to demonstrate that WLS-TV's reorganization was a pretext for age discrimination. This determination is not clearly erroneous. Although WLS-TV's failure certainly permits an inference of discriminatory intent, such an inference is not mandated. Here it was perfectly reasonable for the magistrate judge to find that WLS-TV's actions did not undermine the acknowledged reason for discharging Oxman, a reduction in force. Cf. Tice v. Lampert Yards, Inc., 761 F.2d 1210, 1217 (7th Cir.1985). Moreover, the magistrate judge correctly did not consider WLS-TV's failure to offer Oxman a post-termination position (Magistrate Judge's Report at 55-56) as evidence that the station discriminated against Oxman when it initially terminated him. WLS-TV was not obligated to consider Oxman for openings that did not exist at the time of his dismissal. Cf. Stacey v. Allied Stores Corp., 768 F.2d at 408.
 
 
 41
 V. Witnesses.
 
 
 42
 Although listed as witnesses for the station, WLS-TV did not call either Hattendorf or Applegate to testify. Oxman claims that WLS-TV's failure to call either as a witness creates an adverse inference that "Applegate and ... Hattendorf ... [spoke] and act[ed] on behalf of [Vice President and General Manager] Swanson" and that their statements should therefore be attributed to the station. (Br. at 43.) Before a party can argue to the trier of fact that an adverse inference should be drawn from another party's failure to call a witness, the complaining party must establish that the missing witness was peculiarly in the power of the other party to produce. Chicago College of Osteopathic Medicine v. George A. Fuller Co., 719 F.2d 1335, 1353 (7th Cir.1983). This can be shown in two ways: (1) that the witness is physically available only to the opponent; or (2) that the witness has a relationship with the opposing party that practically renders his testimony unavailable to the moving party. Id. Oxman established neither of these things. He presented no evidence during the evidentiary hearing that Applegate or Hattendorf was within WLS-TV's control at the time of the hearing. More importantly, Oxman could have ensured that their testimony was presented--even if both witnesses were beyond the subpoena power of the district court. See Fed.R.Civ.P. 32(a)(3) (allowing use of deposition at trial or hearing if the "witness is at a greater distance than 100 miles from the place of trial or hearing ... [or if] the party offering the deposition has been unable to procure the attendance of the witness by subpoena...."). No such attempt was made even though Oxman was apparently convinced that Applegate and Hattendorf's testimony would have been helpful to his case. Oxman's claim is decidedly without merit.
 
 Conclusion
 
 43
 This Court has also reviewed other errors suggested directly and indirectly by Oxman's brief and is convinced that these claims are without merit. Because we are not persuaded that there are any grounds on which the judgment below should be disturbed, the district court's determination is affirmed.
 
 
 
 [1]
 In his original complaint Oxman alleged on behalf of himself and a class of persons similarly situated that WLS-TV had discriminated on the basis of race, religion and age. Oxman later amended his complaint to include only his own claim of age discrimination
 
 
 [2]
 In Oxman I, the district court denied WLS-TV's motion either to dismiss Oxman's complaint or to strike Oxman's class allegations. Oxman v. WLS-TV, 595 F.Supp. 557 (N.D.Ill.1984). In Oxman II, the district court denied WLS-TV's first motion for summary judgment. Oxman v. WLS-TV, 609 F.Supp. 1384 (N.D.Ill.1985). The defendant later made a renewed motion for summary judgment; this was granted in Oxman v. WLS-TV, 641 F.Supp. 652 (N.D.Ill.1986). In an unpublished opinion, the district court denied Oxman's motion to reconsider its grant of summary judgment to WLS-TV. Oxman v. WLS-TV, No. 84 C 4699, 1987 WL 12688 (N.D.Ill. June 12, 1987)
 
 
 [3]
 The Magistrate Judge's Report and Recommendation appear in Oxman v. WLS-TV, No. 84 C 4699, 1992 WL 443440 (N.D.Ill. Nov. 19, 1992). The district court's opinion adopting that report may be found in Oxman v. WLS-TV, No. 84 C 4699, 1993 WL 14935 (N.D.Ill. Jan. 21, 1993)
 
 
 [4]
 See Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268
 
 
 [5]
 Here and throughout his brief Oxman's assertions are capable of many interpretations. Similar assertions in fact appear to mean different things at different times. Hopefully this Court has succeeded in discovering Oxman's true meaning. To the extent it has not, the failure is attributable to the opaqueness of Oxman's briefs
 
 
 [6]
 The possibility that WLS-TV discriminated against Oxman by failing to offer him another position is dealt with in Part IV
 
 
 [7]
 This Court notes that its review is of the district court's determination, not the magistrate judge's. Oxman, however, nowhere asserts that the district court failed to weigh the evidence before it properly. Assuming, without holding, that the magistrate judge's errors, having not been righted by the district court, are attributable to that court, we proceed to the merits of Oxman's claims
 
 
 [8]
 Oxman repeatedly asserts in his brief that his case is not a "pretext" case, but rather is a "direct evidence" case. See, e.g., Br. at 32 ("OXMAN's case depends almost entirely on the direct method."). Oxman's claim is puzzling. Direct evidence of discrimination is generally difficult for plaintiffs to obtain. The McDonnell Douglas burden-shifting analysis--of which the pretext inquiry is the final step--therefore allows plaintiffs to succeed in their discrimination suits without adducing such evidence. See supra. The burden-shifting analysis, in other words, reduces the burden on plaintiffs. Oxman appears therefore to complain that the magistrate judge erred by imposing this lesser burden on him. This can't be his argument. Instead, this Court understands Oxman to be complaining that the magistrate judge and the district court erred by not considering certain "direct" evidence of discrimination in evaluating his "pretext" claim