**Roger FUTRELL, Plaintiff–Appellant,**

v.

**J.I. CASE, a Tenneco Company, Defendant–Appellee.**

**No. 93–4049.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1994.

Decided Oct. 20, 1994.

Thomas Nelson (argued), Schneidman, Myers, Dowling & Blumenfield, Milwaukee, WI, for plaintiff-appellant.

John T. Murray, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Alvin R. Ugent, Podell, Ugent & Cross, Milwaukee, WI, and William R. Sullivan, Jr. (argued) and Pamela B. Hall, Franczek, Sullivan, Mann, Crement, Hein & Relias, Chicago, IL, for defendant-appellee.

Gwendolyn Young Reams, James R. Neely, Jr., Robert J. Gregory, and Lorraine C. Davis, E.E.O.C., Office of Gen. Counsel, Washington, DC, for amicus curiae.

Before BAUER and FLAUM, Circuit Judges, and FOREMAN, District Judge.*

FLAUM, Circuit Judge.

Plaintiff Roger Futrell brought suit under Section 7 of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 626, against his former employer, Defendant J.I. Case, for discriminatory discharge from employment. At trial, a jury found for Futrell and awarded him $265,576 in damages. The district court then granted Case's motion for judgment as a matter of law (formerly judgment notwithstanding the verdict) under Fed.R.Civ.P. 50(b) and Futrell appealed. We now reverse.

## I.

Beginning in 1974, Roger Futrell worked in upper-level management for J.I. Case Company as Manager of Manufacturing Engineering at the Case plant in Wausau, Wisconsin. Futrell reported directly to the General Plant Manager and was considered part of the General Plant Manager's staff. Futrell received generally favorable performance reviews during the time he worked for Case.

In February 1984, Dennis George was appointed General Plant Manager of the Wausau plant. Prior to this appointment, George had been the Manager of Manufacturing Engineering at Case's Wichita, Kansas plant. Upon his arrival in Wausau, George had a conversation with Futrell about the appointment, although the two dispute what was said. According to George, Futrell expressed disappointment that George and not he had received the promotion to General Plant Manager. According to Futrell, George raised the issue and said that he would understand if Futrell were upset. Futrell claims he then told George that he was not upset and would support George completely.

Relations between Futrell and George were apparently good at first. At the end of 1984, George gave Futrell a strong evaluation indicating that Futrell's results achieved were above average and that his performance exceeded expectations in many areas. Moreover, in late 1984 or early 1985, George appointed Futrell to head an important venture between the Wausau plant and Newport News Shipping, a sister company of Case. Both sides agree that this undertaking was viewed as critical to the health and continued existence of the Wausau plant. The project went well but was abruptly canceled in early 1986 for reasons unrelated to Futrell's efforts. The relationship between George and Futrell remained stable during the Newport News project, although the two apparently had a number of confrontations. For his work on the project, Futrell received a mostly positive report from George, although George did note in Futrell's "Key Manager Review" that Futrell "has a tendency when the pressure is on to blame other departments. Must learn to function as a team player. Attitude is strained under pressure." Pursuant to Case policy, this review was not made known to Futrell but was sent only to Case's headquarters in Racine, Wisconsin.

The cancellation of the Newport News project again placed the viability of the Wausau plant in question. In Spring of 1986, however, Case decided to close two plants, one in Terre Haute, Indiana and one in Bettendorf,

* The Honorable James L. Foreman of the United States District Court for the Southern District of Illinois is sitting by designation.

Iowa, and move their product lines to Wausau. This consolidation, called Project 57, necessitated a complete overhaul of the Wausau plant, including new layouts, new equipment, and the implementation of new manufacturing techniques. Like the Newport News project, Project 57 revitalized the Wausau plant. And as with the Newport News project, George asked Futrell to lead this crucial undertaking.

The relationship between George and Futrell became more strained as Project 57 progressed. The two often disagreed about the direction of the Project 57, including two major arguments during project staff meetings. The parties disagree as to how heated these arguments were. George and other witnesses contended that Futrell was insubordinate at the meeting and "went too far," while Futrell maintained that although voices were raised, the disputes were neither inappropriate nor extraordinary. In any event, the last of these arguments occurred at a meeting on September 23, 1986, when George and Futrell disagreed over the hiring of certain engineering personnel. A few days later, on September 26, 1986, George fired Futrell.

Futrell filed a complaint on September 28, 1988, alleging that Case had violated the ADEA in discharging him. Futrell asserted claims against Case for both willful and non-willful employment discrimination. On Case's motion for summary judgment, the district court dismissed the non-willful discrimination claim because the two-year statute of limitations on such claims had already run but denied the motion with regard to the willful discrimination claim. The case proceeded to trial on July 12, 1993. At the close of Futrell's case and again at the close of all the evidence, Case moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a). The trial court denied both motions. On July 16, 1993, the jury found for Futrell and awarded him $132,788 in lost wages and benefits and $132,788 in liquidated damages. Case then renewed its motion for judgment as a matter of law, or, in the alternative, a new trial, pursuant to Fed.R.Civ.P. 50(b). The district court granted Case's motion for judgment as a matter of law. The court

found that Futrell had not met his burden of persuasion and had failed to prove that the reasons Case proffered for his discharge were pretextual. *See Futrell v. J.I. Case,* 838 F.Supp. 401, 406–10 (E.D.Wis.1993). This appeal followed.

## II.

Lacking direct evidence of a discriminatory discharge, Futrell attempted to prove age discrimination indirectly pursuant to the Supreme Court test fashioned for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See also Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994) (hereafter *"Baxter Healthcare"*) (applying test to cases brought under the ADEA); *Anderson v. Stauffer Chemical Co.,* 965 F.2d 397, 400 (7th Cir.1992) (hereafter *"Anderson"*) (same); *Ayala v. Mayfair Molded Products Corp.,* 831 F.2d 1314, 1318 (7th Cir.1987) (same); *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 17–18 (7th Cir. 1987) (same); *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984) (same). The test involves three basic steps. First, an employee must present a prima facie case of discriminatory discharge. To show age discrimination in his discharge, the employee must demonstrate: (1) that he was over forty; (2) that he was doing his job well enough to meet his employer's expectations; (3) that he was discharged; and (4) that his employer sought replacement for him. *Baxter Healthcare,* 13 F.3d at 1122; *Anderson,* 965 F.2d at 400; *La Montagne,* 750 F.2d at 1409. Once the employee makes this prima facie case, the employer bears the burden of producing evidence to counter the employee's showing. To do so, the employer must "articulate a legitimate, non-discriminatory reason for the employee's discharge." *Anderson,* 965 F.2d at 400 (quoting *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 427 (7th Cir.1988)). Finally, if the employer succeeds in articulat-

ing this reason, the burden then falls on the employee to prove by a preponderance of the evidence that the employer's proffered reason was only a pretext for discrimination. *Hicks*, —— U.S. at ——, 113 S.Ct. at 2748; *Baxter Healthcare*, 13 F.3d at 1122. When making this proof, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Hicks*, —— U.S. at ——, 113 S.Ct. at 2749.

The district court found and the parties more or less agree that Futrell made a prima facie showing of age discrimination: Futrell was fifty-three at the time he was fired, had generally received favorable evaluations, and was replaced by a younger person.[1] It is also uncontroverted that Case articulated a non-discriminatory reason to rebut that showing: Futrell was fired for his outbursts and disagreements with George. Hence, the dispute between the parties, and the ground on which the district court granted judgment as a matter of law, centers on the third part of the proof.

■ We review *de novo* a district court's grant of judgment as a matter of law. *Mathewson v. National Automatic Tool Co., Inc.*, 807 F.2d 87, 90 (7th Cir.1986). The standard on review is whether the evidence presented, combined with all reasonable inferences that may be drawn from it, sufficiently supports the jury verdict when viewed in the light most favorable to the party winning the verdict. *Id.; Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 512–13 (7th Cir.1985). The reviewing court "does not judge the credibility of witnesses." *Mathewson*, 807 F.2d at 90. "Our role is not to weigh the evidence in search of a preponderance as would a jury, but it is instead the more restrictive function of determining if the evidence in support of the verdict is

substantial; a mere scintilla of supporting evidence will not suffice." *Perfetti v. First Nat. Bank of Chicago*, 950 F.2d 449, 450 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2995, 120 L.Ed.2d 871 (1992) (quoting *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1410 (7th Cir. 1984)) (emphasis in original).

■ Thus, the issue presented is whether Futrell provided enough evidence from which the jury could have reasonably found that Case's proffered reason for discharging Futrell was a pretext for a willful decision to discharge Futrell on account of his age. We note that in reviewing the sufficiency of the evidence in indirect discrimination cases, we do not defer to jury verdicts where the credibility of a defendant's explanation of the discharge is at issue simply because juries have the exclusive right to judge credibility. *See Perfetti*, 950 F.2d at 452. If the evidence does not amply support a plaintiff's claim that the defendant's explanation is unworthy of credence, judgment as a matter of law is entirely appropriate. *Id.; cf. Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1221 (7th Cir.1991) (plaintiff's "own self-serving testimony" that he was fired for reasons other than those stated by the defendant not sufficient to prove age discrimination and withstand motion for judgment notwithstanding the verdict).

## III.

The caveats of *Perfetti* and *Aungst* notwithstanding, we find that Futrell did offer sufficient evidence at trial to prove his ADEA claim. Futrell presented a number of factors going beyond his own testimony on which the jury might have relied in finding that Case willfully terminated Futrell because of his age. While no one of these factors alone might sustain an age discrimination claim, their sum does permit a reasonable inference of discrimination.[2] We ad-

---

1. Case stipulated that Futrell was over 40, was discharged, and that a replacement was sought for him. The court also found, in denying Case's Rule 50(a) motion at the end of Futrell's case, that Futrell had sufficiently proven that "he was meeting the legitimate expectations of the employer." (Tr. at 184–86.) We affirm that finding.

2. Case points out, relying on our decision in *Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir.1990), that "the sum of four nondiscriminatory episodes does not support [a] case anymore than viewing the four episodes separately." While it is true that the sum of many nothings is nothing, Futrell's submissions

dress the validity and relevance of each of these factors in turn.

First, Futrell offered evidence of discriminatory attitudes and actions at Case. Most significantly, George and other Case officials allegedly made remarks regarding the preferability of youth over age. Larry Derks, the personnel manager at the Wausau plant, described in his deposition conversations with George and other Case officials in which

> [t]he issue is always, "You've got sharp, young people that are delivering a lot of work and you've got older people that aren't delivering as much work." The tendency is to pick on the older people, and I have some very definite views on that and so does the company. We always had a lot of discussion on that.

George also allegedly made a comment to Roger Josiger, the only other staff manager as old as Futrell, to the effect that Josiger was not a "forward enough thinker." These statements certainly imply that George might have harbored unfavorable views of older workers.

■ The district court held that such remarks made by an employer "cannot be evidence of a discriminatory discharge" unless made within the context of the employment decision in question. *Futrell,* 838 F.Supp. 401, 408 (E.D.Wis.1993); *see McCarthy v. Kemper Life Insurance Cos.,* 924 F.2d 683, 686 (7th Cir.1991). This reads *McCarthy* too broadly. In *McCarthy,* the plaintiff had chosen to prove discrimination with direct evidence and had eschewed the indirect method of *McDonnell Douglas. McCarthy,* 924 F.2d at 686. Reliance on *McCarthy* is misplaced where, as here, a plaintiff attempts to prove discrimination under the *McDonnell Douglas* indirect evidence framework. *See Monaco v. Fuddruckers, Inc.,* 1 F.3d 658, 660 (7th Cir. 1993) (applying *McCarthy* to analysis of direct method but not to indirect method); *Maier v. Police and Fire Federal Credit Union,* 813 F.Supp. 326, 330 (E.D.Pa.1993) (relying on *McCarthy* in a direct evidence case); *Berlett v. Cargill, Inc.,* 780 F.Supp. 560, 564 (N.D.Ill.1991) (relying on *McCarthy* in a direct evidence case). Indirect evidence cases definitionally depend on such circum-

clearly rise above the nothings presented in

stantial evidence to support an inference of discrimination. *Cf. Oxman v. WLS–TV,* 12 F.3d 652, 657 (7th Cir.1993) ("The *McDonnell Douglas* approach allows victims of discrimination to prevail without presenting any evidence of discrimination."). Of course, such discriminatory statements alone do not prove a discriminatory discharge, but they "may suffice to present a prima facie case ... and may indeed persuade the factfinder that the plaintiff has carried his or her ultimate burden of persuasion." *Ostrowski v. Atlantic Mutual Insurance Cos.,* 968 F.2d 171, 182 (2d Cir.1992).

The district court also found that even without *McCarthy* these remarks do not substantively support a discrimination claim. The district court noted that Derks had testified on direct and cross-examination that the offending words were his and not George's, that no one else had ever heard George make such statements, and that the statements referred to employees' seniority at Case and not their age. The jury, however, was entitled to disbelieve Derks's new explanation and decide that the deposition accurately reflected George's real views. Even if the jury believed that Derks and not George made these remarks, the record provides sufficient evidence that Derks was involved in the discharge decision: George consulted with Derks before firing Futrell, Derks prepared Futrell's severance package, and Derks was present when George terminated Futrell. With regard to George's comments to Josiger, the district court decided that the statement, in its context, referred to Josiger's preference for a traditional manufacturing layout and not to his age. The jury, however, could have decided that the statement was in fact a discriminatory remark, perhaps one with a double meaning. People often use code words when making discriminatory remarks, and George's comments may well fall into this category. *See, e.g., Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507 & n. 4 (5th Cir.1988) (supervisors allegedly commented that plaintiff was unwilling or unable to "adapt" to new systems in the department).

*Holmberg.*

Futrell also introduced evidence that George had demoted Josiger and replaced him with a younger employee. The district court correctly noted that this evidence permitted an inference of discrimination but then discounted it. In the district court's opinion, "such an inference [here], even if permissible, was not reasonable." *Futrell,* 838 F.Supp. at 408. The district court remarked that Josiger's replacement was only four years younger than Josiger, that Josiger never stated that he believed his discharge was the product of age discrimination, and that George had had a legitimate reason for demoting Josiger. Contrary to the district court, we find the evidence of Josiger's demotion relevant for the same reasons the statements to Josiger are relevant: They support the inference that George was hostile to older workers.

To counter Futrell's proofs of discrimination, the district court also relied on statistical evidence showing that over 80% of the workers transferred under Project 57 from Terre Haute and Bettendorf to Wausau were over forty and that more than 15% were older than Futrell. Such evidence might support an inference that Case did not discriminate in hiring older workers. A jury, however, might also have considered the numbers meaningless, given that Case offered no evidence regarding the pool from which those workers were drawn. *See Smith v. General Scanning, Inc.,* 876 F.2d 1315, 1321 (7th Cir.1989) (evidence of other hires irrelevant where defendant omitted information regarding pool size); *Kier v. Commercial Union Ins. Companies,* 808 F.2d 1254, 1258 (7th Cir.1987), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987) ("[W]e are dubious of statistical evidence of hiring which fails to account for the applicant pool."). Indeed, if everyone not chosen to transfer to Wausau were over forty, Case's evidence would even support Futrell's allegations.

■ In addition to the evidence of discriminatory attitudes at Case, Futrell showed that his replacement, Carl Brown, was six

years younger. The district court incorrectly discounted this age difference as unnoteworthy, except insofar as it allowed Futrell to establish his prima facie case. Typically, younger workers will replace older ones; this is an unremarkable phenomenon that does not, in and of itself, prove discrimination. *See Monaco,* 1 F.3d at 661; *La Montagne,* 750 F.2d at 1412–13. But such evidence does contribute to an age discrimination proof when combined with other factors. That the age difference was six years and not twenty-six years speaks only to the significance the factfinder will likely attach to the evidence. Although there are certainly minimal age differences which are irrelevant as a matter of law, we cannot conclude in the context of this case that six years is so minimal. *Cf. Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1506 (5th Cir.1988) (five year age difference not insignificant).[3]

■ Similarly, the district court found it irrelevant that George was ten years younger than Futrell. Like the age difference between Futrell and Brown, this fact does not compel an inference of age discrimination. *Smith,* 876 F.2d at 1321 n. 4. It does, however, potentially explain why George had difficulty working with the two oldest staff managers under him and ultimately fired one and demoted the other: age bias. As such, this fact does contribute to Futrell's indirect proof of age discrimination.

Futrell also challenged the credibility of Case's explanation for his discharge. In addition to submitting proof of his good work reviews, Futrell introduced evidence that George had failed to follow Case's formal disciplinary procedures. Futrell also presented evidence that George had had his secretary transcribe George's personal, handwritten notes on his interaction with Futrell and insert them into Futrell's personnel file after Futrell initiated his discrimination suit. George had supposedly taken the notes, which his secretary testified were on the same pad in the same ink, during Futrell's tenure at Case. George had then destroyed

---

3. We also note that the fact that Futrell's replacement was in the ADEA protected age group does not prevent a finding of age discrimination. *See*

*Kralman v. Illinois Dept. of Veterans' Affairs,* 23 F.3d 150, 155 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994).

the handwritten notes, although he did not remember when or why.

The district court discounted both of Futrell's submissions. The court noted that George and Derks had testified that George had informally counseled Futrell about his insubordination and inability to perform as a team player and that informal counselling of upper-level managers was customary. The court also found that the backfiling incident, while presenting a "closer question," did not cast any real doubt on Case's credibility. Because George explained everything to his secretary, the incident revealed no intent on George's part to conceal anything illicit. Because the secretary had actually seen the handwritten notes, George had not likely manufactured the documents out of "whole cloth." Moreover, the district court concluded that other evidence in the record corroborated the notes substantively, further weakening the concealment allegations.

While the district court's reading of the evidence on the credibility of Case's reason for discharging Futrell is certainly plausible, it is not the only possible interpretation. Read in a light most favorable to Futrell, this evidence indicates an attempt to justify a discharge after the fact. First, Futrell denied receiving anything like the counseling George suggested he had given Futrell. More important, George appears to have created a catalogue of Futrell's shortcomings after he fired Futrell and then to have tried to make it seem as if he had kept the notes contemporaneously. That other trial witnesses corroborated the incidents memorialized in the notes does not prevent this evidence from casting considerable doubt on the validity of Futrell's discharge. An employer's proffered explanation for a discharge does not prevail simply because it contains a true factual predicate; there must also be a causal link between the explanation and the discharge. Futrell's submissions cast substantial doubt on this link. The jury, as finder of credibility, was entitled to believe Futrell.

Finally, Futrell presented evidence that Case had willfully discharged him because of his age. An ADEA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988) ("willful" ADEA violations require "conduct that is not merely negligent"); *Coston v. Plitt Theatres, Inc.*, 860 F.2d 834, 836 (7th Cir.1988) (same); *cf. Shager v. Upjohn Co.*, 913 F.2d 398, 405–06 (7th Cir.1990) (discussing meaning of "willful" in ADEA willful discrimination cases). Derks had made a notation during a telephone conversation with George shortly before George fired Futrell to the effect that providing Futrell with a certain severance and outplacement package would "reduce the chances for an age discrimination suit." George also admitted in testimony that he knew it was unlawful to discriminate on account of age when he fired Futrell. Ordinarily, such factors standing alone do not allow an inference of willfulness. *See Trans World Airlines*, 469 U.S. at 127, 105 S.Ct. at 625 ("We are unpersuaded by respondents' argument that a violation of the Act is 'willful' if the employer simply knew of the potential applicability of the ADEA."); *Partington v. Broyhill Furniture Industries, Inc.*, 999 F.2d 269, 271 (7th Cir.1993) ("No inference of guilt can be drawn from awareness of one's legal obligations; to do so would be to promote the ostrich over the farther-seeing species."). But combined with the backfiling incident, the failure to follow procedures in terminating Futrell, and the possibly discriminatory comments, this evidence does permit a reasonable inference of willful discrimination. *See Partington*, 999 F.2d at 271–72 (noting that "innocuous evidence of age awareness" becomes significant when combined with other evidence of potential discrimination); *Cf. McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 117 (7th Cir. 1986).

Standing alone, perhaps no one of Futrell's proofs would suffice to prove an age discrimination claim. The mere fact that George and other Case managers might have made comments about older workers may not create an inference of discrimination, nor may the fact

that Case terminated Futrell after years of favorable performance reviews, that Case replaced Futrell with someone six years his junior, that George had his secretary backfile handwritten notes on Futrell, or that George and Derks prepared Futrell's severance package with the explicit aim of preventing employment discrimination litigation. However, as this Court has cautioned before,

[w]hen a plaintiff uses the indirect method of proof, no one piece of evidence need support a finding of age discrimination.... [T]o require ... that each piece of circumstantial evidence "standing alone" be sufficient to support a finding of age discrimination is to render meaningless the indirect method of proof and invite the pretexts that can render the ADEA a nullity.

*Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 20 (7th Cir.1987). Taking the facts as a whole, a reasonable jury could have inferred that Case willfully discriminated against Futrell.

For the foregoing reasons, we reverse the district court's decision to grant Case's Rule 50(b) motion and remand with directions to reinstate the jury verdict in favor of Futrell and to entertain his motions for costs and attorney's fees.

REVERSED AND REMANDED.